**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**


**SHELTER LIFE INSURANCE COMPANY**                                       **PLAINTIFF**

**VERSUS**                                               **CIVIL ACTION NO. 2:09cv9KS-MTP**

**MIKE STALLARD, MATTHEW STALLARD,
MARK STALLARD, JENNIFER FAZZIO,
CARRIE RODRIGUEZ, and WAYNE VILLENEUVE**                  **DEFENDANTS**


**MEMORANDUM OPINION AND ORDER**

This matter is before the court on a Motion for Entry of Final Decree of

Interpleader **[#11]** and a Motion to Strike Defendant Fazzio's Amended Answer and to

Dismiss Counterclaim **[#33]** filed on behalf of the plaintiff, Shelter Life Insurance

Company ("Shelter"), and on a Motion for Summary Judgment **[#28]** filed on behalf of

the defendants Mike Stallard, Matthew Stallard and Mark Stallard ("Stallards"), as well

as various motions dealing with the filing of the Amended Answer and scheduling

issues.  The court, having reviewed the motions, the responses, the pleadings and

exhibits on file, the briefs of counsel, the authorities cited, and being otherwise fully

advised in the premises finds that Shelter's motions and the Stallard's motion are well

taken and should be granted as hereinafter set forth.  The court specifically finds as

follows:

## **FACTUAL BACKGROUND**

This action for interpleader concerns two life insurance policies issued by Shelter. The first is life insurance policy L-701406 applied for on May 1, 1998, upon the application of Mariett Stallard, deceased. The policy names the insured as Mariett Stallard. The face value is $100,000.00. The second is life insurance policy L-543621, applied for on March 27, 2001, upon the application of Mariett Stallard, deceased. The policy names the insured as Mariett Stallard. The face value is also $100,000.00.

On September 29, 2008, Mariett Stallard visited the local Shelter office in Hattiesburg, Mississippi and filled out two "Request for Service" forms, requesting a change in her beneficiaries to the proceeds of both of her life insurance policies. On the older policy, No. L-701406, the form indicates that Mike Stallard, her husband, was to be the first beneficiary, receiving 80% of the policy amount. Four of her children, Matthew Stallard, Mark Stallard, Jennifer Fazzio and Wayne Villeneuve were also designated as first beneficiaries, each receiving 5% of the policy amount. The form for the other policy, No. L-543621, reflects Mike Stallard as the primary beneficiary and Matthew Stallard as a contingent beneficiary.

Mariett Stallard died on November 23, 2008. Following her death, Shelter received competing claims to the policy proceeds. One such claim came from Jennifer Fazzio, who alleged in a December 3, 2008 letter that the September 29, 2008 change of beneficiaries was "performed under duress." The Stallard defendants and Wayne Villeneuve also requested payment under the policies. As a result, Shelter filed this interpleader action on January 7, 2009 and joined all potential beneficiaries, including Mike Stallard, Matthew Stallard, Mark Stallard, Jennifer Fazzio, Carrie Rodriguez and

Wayne Villeneuve to resolve the competing claims.

After filing the instant action, Shelter filed a motion for this court to accept the interpleader of the policy proceeds. The court granted the motion on January 20, 2009. **[Record at Document #5]**. Shelter thereafter paid its full and total liability for insurance benefits, including interest on account of the death of the insured, in the amount of $201,130.24 into the registry of this court. All of the defendants in this action have been served and/or entered an appearance at this time.

Jennifer Fazzio waived service of process on or about January 27, 2009. Almost 3 months later, on April 14, 2009, she filed her Answer to Complaint for Interpleader and Defendant's Cross-Claim. *See*, Record at Document 13. No counterclaim was asserted against Shelter at that time. Some three additional months later, on July 13, 2009, without leave of court, Fazzio filed an Amended Answer to Complaint for Interpleader, Amended Cross-Claim against her co-defendants and a Counterclaim against Shelter on July 13, 2009. *See*, Record at Document 25.

Meanwhile, Shelter had, on March 16, 2009 filed the present Motion for Entry of Final Decree of Interpleader. The Stallard defendants filed their motion for summary judgment on July 17, 2009 and supplemented the motion on September 14. 2009. On July 23, 2009, Shelter filed its motion to strike Fazzio's Amended Answer asserting that it was filed without leave of court in violation of Fed. R. Civ. P. 15(a). Shelter also moved to dismiss the counterclaim with prejudice alleging that it asserts an improper or non-existent claim that Shelter should have already paid Fazzio certain proceeds rather than interplead the funds. All motions are now briefed and this matter is ready for adjudication.

# INTERPLEADER

An interpleader is a suit in equity. *First National Bank of Ft. Worth v. United States,* 633 F.2d 1168 (5th Cir. 1981). Generally stated, the purpose of an interpleader action is to protect a stakeholder, most typically an insurance company, from liability when faced with the threat of multiple inconsistent claims to a single fund by allowing the stakeholder to tender the contested funds to the court in lieu of defending against multiple possible lawsuits. *Tittle v. Enron Corp.*, 463 F.3d 410 (5th Cir. 2006). In essence, the interpleader action allows the stakeholder to pay the money in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves their entitlement to the funds. *Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623 (5th Cir. 2002).

Rule 22 of the Federal Rules of Civil Procedure provides in pertinent part that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed.R.Civ.P. 22(a)(1). The purpose of the interpleader device is to allow "a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." 7 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1704 (3d ed.2001), at 540-41.

An interpleader action generally proceeds in two stages. *Mid-America Indemnity Company v. McMahan*, 666 F.Supp. 926, 928 (S.D. Miss. 1987). First, the court determines the right of a party invoking the interpleader to compel the claimants to litigate their claims to the fund in one proceeding. *Id.* Once the court determines the

interpleader is proper, the court may discharge the interpleading plaintiff if it is disinterested and seeks no part of the funds.  *Southtrust Bank of Florida N.A. v. Wilson*, 971 F.Supp. 539, 542 (M.D. Fla. 1997); 28 U.S.C. § 2361.  In the second stage of the interpleader action, the court determines the respective rights of the various claimants to the fund.  *Mid-Ameirca*, 666 F.Supp. at 928.

28 U.S.C. § 1335 provides that interpleader is proper before a federal district court when the following conditions have been satisfied:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

Thus, as stated in the statute, three conditions must be met for granting interpleader status and the exercise of original jurisdiction by a federal district court: (1) an amount in controversy in excess of $500.00; (2) the deposit by the plaintiff of such

money or property into the registry of the court; and (3) the presence of two or more

adverse claimants of diverse citizenship, as defined by 28 U.S.C. § 1332, who claim or

may claim to be entitled to such money or property. There is no dispute that Shelter's

Complaint for Interpleader satisfies all three of these conditions.

28 U.S.C. § 2361 sets forth the relief available to an interpleader plaintiff. The

statute provides, in relevant part, as follows:

> In any civil action of interpleader ..., a district court may issue its process for all
> claimants and enter its order restraining them from instituting or prosecuting any
> proceeding in any State or United States court affecting the property, instrument
> or obligation involved in the interpleader action until further order of the court....
>
> Such district court shall hear and determine the case, and may discharge the
> plaintiff from further liability, make the injunction permanent, and make all
> appropriate orders to enforce its judgment.

28 U.S.C. § 2361.

This statute specifically authorizes a district court in which an interpleader action

is properly brought to discharge a plaintiff and permanently enjoin all claimants from

instituting or prosecuting any proceeding in any state or federal court affecting the

property, instrument or obligation involved in the interpleader action until further action

of the court. 28 U.S.C. § 2361; *see also, Advantage Title Agency, Inc. v. Rosen*, 297 F.

Supp. 2d 536 (E.D.N.Y. 2003). Once it is determined that an action in interpleader is

properly before the court, it may enjoin proceedings relating to the subject matter of the

interpleader action. *Mid-American Indemnity Co. v. McMahan*, 666 F. Supp. 926 (S.D.

Miss. 1987). § 2361 expressly permits this injunction to become permanent ,i.e., a

discharge with prejudice.

In this case, the court has previously determined that interpleader is proper in

allowing the funds at issue to be deposited in the registry of the court. *See*, Record at Document 5. Moreover, the facts set forth above demonstrate that interpleader is proper in this instance. Shelter further asserts that it is undisputed that it has no interest in the insurance proceeds at issue, thus, the court may now discharge Shelter from this interpleader action and from further liability as to the funds interpleaded.

Fazzio is the only defendant who has objected to the relief requested by the plaintiff. She asserts that she is entitled to a trial on the appropriateness of the requested interpleader relief. Specifically, she contends that her counterclaim against Shelter calls into question the procedure Shelter employed in allowing Marriet Stallard to change her beneficiaries and supposed inconsistencies in those change of beneficiary forms.

First, the counterclaim of Fazzio was improperly filed without leave of court or agreement of the plaintiff and is due to be stricken from the record as stated hereinafter. Regardless, her counterclaim runs contrary to the well settled law regarding interpleader actions thus denying Fazzio any entitlement to relief thereunder even it the court allowed the counterclaim to stand as will be addressed below.

Shelter asserts that Fazzio's Amended Answer, Cross Claim and Counterclaim is improper and should be stricken as it was filed without leave of court. Fazzio was served with the Complaint on January 27, 2009. It was not until April 14, 2009 that Fazzio filed her Answer to Complaint for Interpleader and Defendant's Cross-Claim. No counterclaim was asserted against Shelter at that time. Fazzio then waited until July 13, 2009 to file her Amended Answer to Complaint for Interpleader, Amended Cross Claim and Counterclaim. The Federal Rules of Civil Procedure do not allow such an

amendment without leave of court or written consent of the parties. Federal Rules of

Civil Procedure 15(a) states:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party....

The plaintiff is correct that far more than 20 days passed after Fazzio filed her

April 14, 2009 Answer and before her Amended Answer to Complaint for Interpleader,

Amended Cross Claim and Counterclaim was filed on July 13, 2009.  In fact, 90 days

passed between Fazzio's answer and amended answer.   Accordingly, when Fazzio

attempted to file her amended answer, cross claim and counterclaim on July 13, 2009,

Rule 15(a) required that she obtain leave of Court or the written agreement of the

plaintiff.  Fazzio did neither.  Accordingly, Fazzio's Amended Answer to Complaint for

Interpleader, Amended Cross Claim and Counterclaim are subject to being stricken as it

was filed in violation of the Federal Rules of Civil Procedure.

As to Fazzio's counterclaim on the merits, where a stakeholder is allowed to

bring an interpleader action, rather than choosing between adverse claimants, its failure

to choose between the adverse claimants (rather than bringing an interpleader action)

cannot itself be a breach of a legal duty.  *See Lutheran Bhd. v. Comyne*, 216 F.Supp.2d

859, 862 (E.D.Wis.2002) (holding that the bringing of a valid interpleader action shields

a plaintiff from liability for counterclaims where those "counterclaims are essentially

based on the plaintiff's having opted to proceed via an interpleader complaint rather

than having chosen from among competing adverse claimants"); *Metropolitan Life Ins.*

*Co. v. Barretto*, 178 F.Supp.2d 745, 748 (S.D.Tex.2001) (holding that interpleader

protection extends to counterclaims that arise from "utilizing the protections afforded by

the interpleader"); and *Prudential Ins. Co. of America v. Hovis,* 553 F.3d 258, 265 (3rd

Cir. 2009)(holding that a stakeholder "having brought an appropriate interpleader action

shields it from any liability relating to those claims."; and "interpleader action protects

[stakeholder] from liability to the claimants both for further claims to the stake and for

any claims directly relating to its failure to resolve that controversy.").  Clearly, even if

the court was to allow the amended counterclaim, it would be futile.

     Thus, Shelter is entitled to a final decree of interpleader, dismissing Shelter with

prejudice from this matter and permanently enjoining all of the defendants, and any

person or entity claiming through or for the benefit of them, from filing any proceedings

against Shelter related to the funds at issue in this matter in any other court without

further order of this court.


### STALLARD'S SUMMARY JUDGMENT

     Finally, before the court is the Motion for Summary Judgment filed by Mike,

Matthew and Mark Stallard pursuant to Fed. R. Civ. P. 56, predicated on the assertion

that there are no genuine issues of material fact, and they are entitled to judgment as a

matter of law.  Specifically, the Stallards contend that there is no competent evidence of

"undue influence" over Mrs. Stallard related to the September 29, 2008 change of

beneficiaries, and the claims of Fazzio are wholly inconsistent with established

Mississippi precedent.  In addition, the Stallards argue in their Motion for Judgment on

the Pleadings pursuant to Fed. R. Civ. P. 12(c)., that there is no allegation, by any party,

that Mike Stallard is not the 100% beneficiary of policy no. L-543621.

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one

of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalia*n, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting*

*Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary

judgment motion, one may not rely on mere denial of material facts nor on unsworn

allegations in the pleadings or arguments and assertions in briefs or legal memoranda.

The nonmoving party's response, by affidavit or otherwise, must set forth specific facts

showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also,*

*Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the]

court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents

merely filed and those singled out by counsel for special attention-the court must

consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting

*Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

Mariett Stallard, deceased, applied for and received two separate life insurance

policies from Shelter Life Insurance Company.  The first is life insurance policy

L-701406 applied for on May 1, 1998, with a face amount of $100,000.  The policy

identifies, defendant, Mike Stallard as Primary Beneficiary and names Contingent

Beneficiaries as Matthew Stallard and Mark Stallard equally.

The second policy obtained by Mariett Stallard, is life insurance policy L-543621

applied for on March 27, 2001, nearly three years after the first life insurance policy. The

face amount of this policy is $100,000, with the defendant, Mike Stallard, identified as

the Primary Beneficiary.

On August 18, 2006, Mariett Stallard requested a change of beneficiaries to

policy no. L- 543621, the second policy, to designate Mike Stallard to receive the full

policy amount of $100,000 upon her death.  In addition, the request states that the final

$100,000 is to be distributed as follows: $80,000 to Jennifer Fazzio; $10,000 to Carrie Rodriguez; $10,000 to Wayne Villeneuve. However, this additional change to the policy exceeded the face amount of $100,000.

On May 10, 2007, Mariett Stallard requested a change of beneficiaries to the first policy, no. L-701406. In this request, Mariett designated Mike Stallard to receive $120,000 upon her death and the final $80,000 to be distributed to Jennifer Fazzio. This designation exceeds the $100,000 face value of the policy.

On September 29, 2008, Mariett Stallard once again requested change of beneficiaries to the first policy, no. L-701406. In this request, Mariett designates Mike Stallard to receive 80% of the $100,000 policy amount with the final 20% to be distributed as follows: Matthew Stallard 5%; Mark Stallard 5%; Jennifer Fazzio 5%; and Wayne Villenueve 5%. Also, on September 29, 2008, Mariett requested a change to the second policy, no. L-543621, to identify Mike Stallard as the Primary Beneficiary and Matthew Stallard as the Contingent Beneficiary.

The Stallard defendants argue that their Motion for Summary Judgment should be granted because Jennifer Fazzio has failed to proffer any evidence showing that the September 29, 2008 change of beneficiaries was made "under duress" and no competent proof of any duress exists. They contend that Fazzio has merely made conclusory allegations as to duress or improper influence that are unsubstantiated by any facts or relevant case law. Similarly, the defendants contend that their Motion for Judgment on Pleadings should be granted because there is no dispute as to Mike Stallard being the 100% beneficiary to the second policy, no. L-543621.

The standard of review is the same under Rule 12(c) as under Rule 12(b)(6).

*Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004).  In ruling on a 12(b)(6) motion, the court may not go outside the pleadings, specifically the complaint in this case.  As the Fifth Circuit has stated, "We may not go outside the pleadings.  We accept all well-pleaded facts as true and view them in the light most favorable to the [nonmoving party]. We cannot uphold the dismissal 'unless it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief.'" *Colle v. Brazos County, Texas*, 981 F.2d 237, 243 (5th Cir. 1993)(internal footnotes and citations omitted).  *See also, Cinel v. Connick*, 15 F.3rd 1338, 1341 (5th Cir. 1994).

Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain.  *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)(quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n. 8 (5th Cir. 2000)).

The Stallards argue in their motion for judgment on the pleadings that there have been no allegations by any party that Mike Stallard is not entitled to 100% of the second policy, no. L-543621.  Indeed, in the original designation of beneficiaries, Marriet Stallard named Mike Stallard as 100% beneficiary of policy no. L-543621.  Again, in the change of beneficiary formed filled out on August 18, 2006, Marriet Stallard, continued, to designate Mike Stallard as receiving 100% of the policy value, $100,000, even though she designated a remainder interest in proceeds in excess of the face amount of the policy.  Likewise, in the final change of beneficiary on September 29, 2008, Marriet

Stallard continued to designate Mike Stallard as 100% beneficiary of policy no. L-543621. It is undisputable that Mike Stallard is entitled to the full proceeds of Policy No. L-543621, the second policy.

The principles involved in determining the mental ability to make effective change of the beneficiary of a life insurance policy have been analogized to those involved in determining mental ability to make an effective will. *Appleman on Insurance* 2d, § 180.10 n.489 (2006). The same rule for testing mental capacity applies alike to wills and deeds. *Whitworth v. Kines*, 604 So. 2d 225, 228 (Miss. 1992). "Mississippi law requires that the party seeking to set aside a deed prove that the grantor lacked mental capacity at the time of execution." *In re: Conservatorship of Cook*, 937 So. 2d 267, 470 (Miss. Ct. App. 2006). Evidence of mental incapacity must be made by clear and convincing evidence and not merely a showing that the grantor was suffering from general weakness. *Id.*

The relevant inquiry is "whether the grantor understands and appreciates the nature of his act, the natural objects or persons of his bounty and their relation to him, and is capable of determining how he desires to devise and bequeath his property." *Whitworth*, 604 So. 2d at 228. It is true that a husband or a wife may exercise undue influence, but merely showing that there is a close relationship between the spouses is not a showing of undue influence. *Genna v. Harrington*, 254 So. 2d 525, 528 (Miss. 1971). In fact, in order to set a will aside on grounds of undue influence, it must be shown that the one spouse used methods to overcome the free and unrestrained will of the other spouse. *Id.* at 529. The burden of proving lack of mental capacity rests squarely with the party seeking to have the instrument set aside. *Whitworth*, 604 So. 2d

at 229.

Fazzio asserts that Mariett Stallard was unduly influenced by her husband, Mike Stallard.  In support of this argument, Fazzio alleges a general knowledge of physical and mental abuse, that allegedly became more prevalent over the course of time.  However, the Stallard defendants assert that Mariett Stallard's actions are inconsistent with Fazzio's assertions.

In response to the Stallards' motion, Fazzio has provided the affidavits of three of Mariett Stallard's sisters, Janice Kraft, Linda Sparks and Marilyn Cameron.  Kraft lives in California, Sparks in Texas and it is not disclosed where Cameron lives nor is Cameron's affidavit executed even though the court gave permission to Fazzio to substitute an executed affidavit in the place of the un-executed one.

According to the affidavits, approximately two months before her death, Mariett Stallard was visited by two of her sisters, Janice Kraft and Linda Sparks.  She also allegedly spoke on the phone with her twin sister, Marilyn Cameron.  All three sisters allege that Mike Stallard refused to allow them to stay at the home of Mariett while they were visiting.  Sparks stated that she saw Mariett about two months before her death and noticed bruises on and around her face.  At this time, Mariett was under hospice care.  Mariett did not tell her how she received the bruises.  Kraft claims that Mariett was seen at a family reunion at some undisclosed time and place with bruising.  However, apparently Kraft did not see the bruising nor does she express any personal knowledge other than the hearsay statement provided.  The sisters also allege that Mariett's family was not allowed to visit Mariett without Mike Stallard being present.

Fazzio's counsel asserts that Mariett Stallard had, on previous occasions,

advised all of her sisters that she had left Jennifer Fazzio $80,000.00. None of the affidavits support that contention, however. Kraft stated that Mariett told her at some undisclosed time that she (Mariett) was leaving $60,000 to Fazzio. The other two affidavits state nothing in this regard.

Fazzio's counsel argues that approximately six weeks before her death, Mariett Stallard had spoken to her sisters and advised them that Mike Stallard had forced her to make changes to her beneficiaries. Once again, the affidavits provided do not support this argument. Only the statement of Kraft mentions that Mariett called her crying because Mike Stallard had allegedly made her (Mariett) change all of her "paperwork" to reflect Mike as the sole beneficiary. This statement is contrary to the facts. Mariett's Will was executed some seven and one-half years prior and it named Mike as her sole beneficiary, if he survived her. Additionally, Mariett had changed the beneficiaries on only the first policy from what she had originally set - and even that change left a percentage of the policy proceeds to Fazzio.

Linda Sparks also provided an unsupported allegation that there had been numerous domestic violence complaints against Mike Stallard at some undisclosed time and place. The sisters also assert that before her death, Mariett Stallard was taking Morphine and other strong medications and was not competent. There is no medical testimony or records to support this contention.

Finally, Marilyn Cameron, Mariett's twin sister asserts in her unsigned affidavit that she had witnessed verbal abuse of Mariett by Mike Stallard and suspected physical abuse at his hands as well. There is nothing in the record to clarify or support when or where such abuse occurred and how it contributed to any undue influence on Mariett to

change her policy beneficiaries.

Contrary to the claims of undue influence, it is uncontradicted that Mariett went alone to the insurance agency on September 29, 2008, to execute the change of beneficiary forms.  Also, the Stallards have presented the Last Will and Testament of Mariett Stallard executed on May 10, 2001, and a hand written letter from Mariett to Mike apparently written in anticipation of her death and shortly before that occurrence. As stated above, the Will names Mike as the sole beneficiary of Mariett's entire estate if he survives her, and there is no indication that it was altered or revoked.

The letter is a heart-warming farewell to a loving husband and contains her final wishes for funeral arrangements.  It certainly does not appear to have been written by someone who had been abused and subjected to undue influence at the hands of another.  Nor does it appear to have been written by someone who was incompetent or without the faculties to manager her own affairs.

After reviewing all of the evidence presented, the court concludes that Fazzio has failed to present a genuine issue of material fact which would show, by clear and convincing evidence, that Mike Stallard exerted undue influence on Mariett Stallard in the designation of beneficiaries on the two subject policies.  Conclusory statements and unsupported allegations cannot defeat a proper summary judgment motion.  The Stallard motion should thus be granted.

IT IS THEREFORE ORDERED AND ADJUDGED that Shelter's Motion for Entry of Final Decree of Interpleader **[#11]** is granted and the plaintiff is instructed to provide a final judgment of interpleader consistent with this Order within five days of this Order.

IT IS FURTHER ORDERED AND ADJUDGED that Shelter's Motion to Strike

Defendant Fazzio's Amended Answer and to Dismiss Counterclaim **[#33]** is granted.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#28]** filed on behalf of the defendants Mike Stallard, Matthew Stallard and Mark Stallard is granted.

IT IS FURTHER ORDERED AND ADJUDGED that the parties are to submit a final judgment dismissing this entire matter with prejudice and distributing the interpleaded funds consistent with Mariett Stallard's designation of beneficiaries dated September 29, 2008, within ten days of this Order.

IT IS FURTHER ORDERED AND ADJUDGED that all other pending motions are denied as moot.

SO ORDERED AND ADJUDGED this 14th day of January, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE